UNITED STATES DISTRICT COURT
                        DISTRICT OF NEW HAMPSHIRE

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | No. 1:20-cr-05-LM |
| v. | ) | |
| | ) | |
| JUSTIN MCINNES | ) | |
| | ) | |

          OBJECTION TO THE DEFENDANT'S SENTENCING MEMORANDUM
                AND MOTION FOR UPWARD DEPARTURE AND VARIANCE

**I.      Introduction**

The government moves for an upward variance on the grounds that the defendant is a recidivist from whose future crimes the public needs protection. The defendant's current offenses of the unlawful possession of firearms and armed drug trafficking, on top of his long history of dangerous conduct and probation violations, show that he presents an unacceptably high risk of recidivism. Moreover, the defendant's criminal history substantially underrepresents the seriousness of his criminal history or the likelihood that he will commit other crimes. An upward departure or variance is warranted here.

Though the defendant seeks a sentence at the low-end of the guideline range, a sentence within the guideline range would not reflect the nature, circumstances, and seriousness of these crimes. Neither would it promote respect for the law, provide just punishment, or afford adequate deterrence for similar crimes. In the government's view, the nature of the offenses and the surrounding circumstances warrant a sentence of 180 months of imprisonment followed by a term of three years of supervised release.

## II. Offense Conduct

On September 5, 2018, of officer with the Manchester Police Department initiated a motor vehicle stop of a car the defendant was driving. PSR ¶ 64. When the officer approached the vehicle, the defendant fled and led the officer on a high-speed chase on I-293. *Id.* The officer stopped pursuing the defendant out of concern for public safety when he noticed his own speed to be 105 miles per hour. *Id.* For this conduct, the defendant was convicted of disobeying law enforcement.

The following day, officers planned to arrest the defendant and assembled outside an apartment building in Manchester. At some point, the defendant left the apartment and got into a Jeep. Another individual, S.T., got into the passenger seat. Officers approached the Jeep and announced their presence by yelling "Police." PSR ¶ 14. The defendant traveled backwards out of the driveway and ignored officers' commands to stop and show his hands. *Id.* After the vehicle was on the road, the defendant drove towards the officers—one had to jump out of the way to avoid being hit.

When officers arrested the defendant, he had over 20 grams of cocaine and 9 grams of crack cocaine on his person. An examination of the defendant's phones revealed that he was selling drugs. Officers also searched the Jeep and found three firearms—a Mossberg shotgun, a Taurus pistol, and a Kel-Tec pistol—counterfeit money, and materials to manufacture counterfeit money. In a recorded jail call, the defendant acknowledged that "every firearm in the f*cking car was fully loaded." PSR ¶ 16. The investigation revealed that the defendant had an acquaintance, M.M. straw-purchase firearms for him in exchange for $200.

**III.     The Guideline Range**

The defendant pleaded guilty to one count of being a prohibited person in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), possession with intent to distribute cocaine and cocaine base, in violation of 21 U.S.C. § 841(a)(1), and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c).  Under the guidelines, possession with intent to distribute controlled substances and the unlawful possession of a firearm group and the applicable guideline range is the highest offense level of the counts in the group.  Here, both counts result in an adjusted offense level of 15.  The guideline analysis for possession with intent to distribute is as follows:

| Description | Offense Level | Citation |
|---|---|---|
| Base offense level | 16 | 2D1.1(a)(5) |
| Reckless endangerment during flight | +2 | 3C1.2 |
| Timely acceptance of responsibility | -3 | 3E1.1(b) |
| **Total:** | **15** | |

PSR ¶¶ 23-30. The guideline analysis for the unlawful possession of firearms yields the same adjusted offense level:

| Description | Offense Level | Citation |
|---|---|---|
| Base offense level | 14 | 2K2.1(a)(6) |
| 3-7 firearms | +2 | 2K2.1(b)(1)(A) |
| Reckless endangerment during flight | +2 | 3C1.2 |
| Timely acceptance of responsibility | -3 | 3E1.1(b) |
| **Total:** | **15** | |

PSR ¶ 22.

The guideline for possession of a firearm in furtherance of a drug trafficking offense is a term of 60-months imprisonment to run consecutively to any other sentence.  PSR ¶ 31.

The defendant's total criminal history score is 30 – 28 points from adult criminal convictions and 2 points for committing the instant offenses while under a criminal justice

system – resulting in a criminal history category of VI. PSR ¶¶ 58-60. The guideline imprisonment range on Counts One and Two is 41 to 51 months. The guideline imprisonment range on Count Three is 60 months. In total, this results in a guideline range of 101-111 months of imprisonment. PSR ¶ 90.

## IV. A two-level enhancement under guideline 3C1.2 applies.

The defendant admits that he saw individuals with their weapons drawn and that he accelerated the Jeep towards those individuals. He concedes that the passenger in his vehicle was able to identify the individuals as law enforcement officers. He also concedes that the officers wore vests bearing the word "POLICE" on them. He does not dispute that officers announced their presence by yelling "Police." He admits that they also yelled "Freeze! Put your hands up!" Despite this, he maintains that he did not know they were law enforcement officers. So, according to the defendant, the two-level enhancement under guideline 3C1.2 should not apply here. The government understands why the defendant will not concede that he knew that the individuals he saw were law enforcement—the defendant is facing charges for attempted murder for his conduct during the flight. PSR ¶ 65. Regardless, the government will show, by a preponderance of the evidence, that he did know they were law enforcement.

Section 3C1.2 provides that a two-level enhancement is warranted if the defendant "recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." Recklessness requires that the defendant was "aware of the risk created by his conduct and the risk was of such a nature and degree that to disregard that risk constituted a gross deviation from the standard of care that a reasonable person would exercise in such a situation." U.S.S.G. § 2A1.4, comment (n 1).

4

Though the defendant claims that he did not know that the individuals approaching him were police officers, that excuse rings hollow. The passenger of the vehicle heard officers announce themselves as law enforcement. *Id.* Officers announced themselves as "Police," were wearing vests marked "POLICE," and instructed the defendant to "freeze" and put his hands up. And the defendant has a history of fleeing from and lying to law enforcement and trying to avoid responsibility for his crimes. *See* PSR ¶ 64 (flight from officer during traffic stop); *Id.* at ¶ 39 (continued driving after hitting a parked vehicle); *Id.* at ¶ 42 (gave false name to officers); *Id.* at ¶ 47 (offered to pay witness $300 to destroy evidence); *Id.* at ¶ 49 (offered to pay passenger $1000 to falsely take responsibility for a car crash). Like the day before, the defendant was attempting to flee from law enforcement—he was trying to flee because he knew he had guns, drugs, and counterfeit money in his car. The enhancement applies.

V.      **An upward departure and variance are appropriate here.**

A district court may impose a variance if the case at hand falls outside the "heartland" to which the Commission intends individual Guidelines to apply, perhaps because the Guidelines sentence itself fails properly to reflect the § 3553(a) considerations, or perhaps because the case warrants a different sentence regardless. *Rita v. United States*, 551 U.S. 338

Section 4A1.3 of the Guidelines provides that an upward departure may be warranted "[i]f reliable information indicates that the defendant's criminal history category substantially underrepresents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." U.S.S.G. § 4A1.3(a)(1). The Court may look to, among other things: (1) "whether the defendant was pending trial or sentencing on another charge at the time of the instant offense"; and (2) "prior similar adult criminal conduct not resulting in a criminal conviction." U.S.S.G. § 4A1.3(a)(2)(D)-(E). An upward departure from Category VI

5

should be structured "by moving incrementally down the sentencing table to the next higher offense level in [CHC] VI until [the Court] finds a guideline range appropriate to the case." U.S.S.G. § 4A1.3(a)(4)(B).

Under section 5K2.0, the Court may depart upward if "there exists an aggravating…circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that, in order to advance the objectives set forth in 18 U.S.C. § 3553(a)(2), should result in a sentence different from that described." *See United States v. Kim*, 896 F.2d 678, 683 (2d Cir. 1990) ("[W]ith respect to some acts of misconduct, the Commission contemplated that the sentencing judge will make an upward departure under the general authority of section 5K2.1."); *see also United States v. Dolloph*, 75 F.3d 35 (1st Cir. 1996); *United States v. Hardy*, 99 F.3d 1242 (1st Cir. 1996) (suggesting § 5K2.0 is suitable upward departure for the unusual aggravating attributes of the crime of conviction).

This is precisely one of those cases that falls outside the heartland, thereby warranting an upward variance or departure. Because the departure reasons overlap with those warranting a variance, the arguments and facts which relate to the departure request are incorporated in support of the motion for variance.

### A. The defendant's criminal history category substantially underrepresents the seriousness of his criminal history and recidivism rate.

Despite being only 32 years old, the defendant has already accrued adult convictions for receiving stolen property (five), disobeying a police officer, accomplice to forgery, fraudulent use of a credit card (five), burglary (three), witness tampering (two), theft by unauthorized taking (three), possession of a controlled drug, delivery of prohibited article, and possession of cocaine.

PSR ¶¶ 35-57. This near continuous pattern of criminal history resulted in a criminal history score of 28 despite that many of his adult convictions yielded no criminal history points.

Yet, the defendant receives a substantial break under the Guidelines insofar as he is not deemed to have a prior conviction for either a "crime of violence." PSR ¶¶ 46; 55, 57. For example, despite having participated in a burglary of a police officer's residence, defendant's crimes does not qualify as a "crime of violence" because the New Hampshire statute (NH RSA 635:1) definition of "occupied structure" (which includes a boat) is broader than generic burglary. PSR ¶¶ 46, 55. Had these two convictions both counted as prior "crimes of violence," The defendant would have faced a base offense level of 24 under guideline 2K2.1(a)(2). Even after accounting for acceptance of responsibility his guideline range would have been 100-125 months.

Similarly, despite being on parole in four different cases, the defendant only received two additional points under guideline 4A1.1(d). He would have received the same number of points had he been on parole in only one case. These illustrations inform the degree to which the guideline range does not adequately account for the defendant's past criminal conduct.

The First Circuit has additionally recognized that a defendant's "grave signs of recidivism" may also weigh "heavily in favor of a substantial upward departure." *United States v. Fahm*, 13 F.3d 447, 452 (1st Cir. 1994). When a defendant has been "treated leniently in the past," and yet still continued to engage in additional criminal conduct, the Court may depart upward under 4A1.3 on the grounds of defendant's "serious recidivism." *Id.* at 452.

A review of the defendant's criminal record shows that he epitomizes the person likely to commit "further crimes." Upon turning 18, and just a few months after being arrested for resisting arrest or detention (*see* PSR ¶ 36), the defendant engaged in a high-speed chase and

7

intentionally rammed his truck into a victim, throwing the victim onto the hood. PSR ¶ 37. For that conduct, the defendant was convicted of reckless conduct and reckless driving, and sentenced to 12 months, all but 50 days suspended upon 2 years of good behavior. *Id.* Within the year after committing those offenses, the defendant committed eight other criminal offenses: receiving stolen property (two counts), conduct after an accident (three counts), driving under the influence of excess alcohol, and driving after revocation or suspension (two counts). PSR ¶¶ 37-41.

The defendant's criminal lifestyle continued and, in 2008, the defendant committed twelve criminal offenses: disobeying a police officer, revocation for reckless driving or DUI, accomplice to forgery, fraudulent use of credit card (six counts), driving after revocation or suspension for underage DWI, burglary, and witness tampering. PSR ¶¶ 42-47. For these twelve convictions, the defendant received one criminal history point.

He continued to commit similar offenses, and between the ages of 19 and 28, committed 16 offenses: receiving stolen property (three counts), witness tampering, false report to law enforcement, theft by unauthorized taking (four counts), possession of a controlled drug, operate after certification as a habitual offender, theft by deception, criminal mischief, burglary (two counts), and delivery of prohibited article. PSR ¶¶ 48-57.

The defendant's record includes a substantial number of adult criminal convictions for which zero criminal history points were imposed. PSR ¶¶ 37-46, 54. Not even incarceration served to deter the defendant; he committed one offense while he was an inmate at the Rockingham County House of Corrections. PSR ¶ 56. He has attempted to interfere with the administration of justice and avoid responsibility for his actions by trying to pay off two

witnesses. PSR ¶¶ 47, 49.  He has repeatedly violated terms of probation and parole and committed the instant offenses while on parole.  PSR ¶¶ 38, 41, 49, 50, 52, 53, 54, 55, 57, 59.

This long, continuous, and flagrant course of criminal conduct establishes that the defendant is a recidivist who is likely to reoffend here.  Taking all of these issues together, even a criminal history category of VI substantially underrepresents the seriousness of his criminal history and an upward departure is appropriate.  Alternatively, an upward variance is justified on this basis to protect society from his future crimes.

### B. The circumstances of the defendant's conduct warrant an upward departure or variance.

A guideline sentence in this case would not adequately reflect the seriousness of the defendant's criminal conduct.  The guidelines do not adequately account for the fact that the defendant possessed the firearms in connection with different felony offenses on different dates than his drug trafficking offense.

Under guideline 2K2.1(b)(6)(B), a four-level enhancement applies if the defendant possessed a firearm in connection with another felony offense.  Here, the defendant possessed the firearms in connection with multiple felony offenses—the drug trafficking offense charged here, but also aiding and abetting the straw purchase of the firearms, manufacturing counterfeit money, and possibly possession of a stolen firearm.

The investigation revealed that one of the defendant's acquaintances, M.M., purchased the firearms for McInnes in exchange for $200 per firearm.  On August 15, 2018, she purchased Taurus pistols for the defendant, one of which was seized from the Jeep and one of which was never recovered, in exchange for $400.  Similarly, on August 30, 2018, M.M. purchased the Mossberg shotgun for the defendant in exchange for $200.   Both of these purchases involved a material false statement – when completing the paperwork, M.M. answered "Yes" to the

9

following question on the ATF Form 4473: "Are you the actual transferee/buyer of the firearm(s) listed on this form?" Because she was purchasing the firearms for the defendant, this statement was false. Thus, the defendant possessed the firearms in connection with another felony offense—he aided and abetted the straw purchase of the firearms, in violation of 18 U.S.C. § 922(a)(6), and 18 U.S.C. § 2.

The defendant's version of how he obtained the firearms is somewhat different. He claimed, on a recorded jail call, that he stole the firearms from M.M. Under his version of events, he possessed the firearms in connection with another felony offense, the theft of firearms or possession of stolen firearms. NH Rev Stat § 637:11(I)(b) (noting that theft of a firearm is a class A felony); 18 U.S.C. § 922(j).

Finally, he also possessed the firearms in connection with making counterfeit currency, another felony offense. NH Rev Stat § 6381(III)(a) (noting that forgery is a class B felony).

Under guideline 2K2.4, which applies to defendant's conviction for possession of the firearms in connection with a drug trafficking offense.

Here, the defendant's underlying offense of conviction for the 924(c) count is a drug trafficking crime. Despite this, the guidelines preclude the four-level enhancement for the defendant's possession of firearms in connection with any other felony offense.[1] The commentary to guideline 2K2.4, the offense guideline governing his 924(c) conviction, states: "[i]f a sentence under this guideline is imposed in conjunction with a sentence for an underlying offense, do not apply any specific offense characteristic for possession…of…[a] firearm when

---

[1] There is some caselaw holding that the four-level enhancement under 2K2.1(b)(6) would apply in this circumstance where the other felony offenses do not result in an offense of conviction. *See United States v. Jones*, 620 F. App'x 434, 438-39 (6th Cir. 2015). Counsel for the United States consulted with an attorney with the United States Sentencing Commission who stated that the guidelines do preclude application of the four-level enhancement here despite the fact that the other conduct has not resulted in a conviction.

10

determining the sentence for the underlying offense." U.S.S.G. § 2K2.4, comment (n. 4). It further states, "[a] sentence under this guideline accounts for any…weapon enhancement for the underlying offense of conviction, including any such enhancement that would apply based on conduct for which the defendant is accountable under" the principles of relevant conduct. *Id.*

If the enhancement under 2K2.1(b)(6) applied, the applicable guideline would be for the unlawful possession of a firearm would yield a higher guideline range:

| Description | Offense Level | Citation |
|---|---|---|
| Base offense level | 14 | 2K2.1(a)(6) |
| 3-7 firearms | +2 | 2K2.1(b)(1) |
| Possession in connection with another felony offense | +4 | 2K2.1(b)(6) |
| Reckless endangerment during flight | +2 | 3C1.2 |
| Timely acceptance of responsibility | -3 | 3E1.1(b) |
| **Total:** | **19** | |

Based upon a total offense level of 19 and a criminal history category of VI, the guideline imprisonment range for Counts One and Two would be 63-78 months. The guidelines, therefore, do not adequately address the complete scope of the defendant's conduct and an upward departure is warranted. It does not account for the fact that he paid someone to straw-purchase firearms for him. It does not account for the fact that he possessed the firearms in connection with manufacturing counterfeit money.

## VI.    Conclusion

A sentence of 180 months of imprisonment, followed by three years of supervised release, would provide just punishment and promote respect for the law. The defendant's previous interactions with the justice system did nothing to deter him from committing the offenses he now stands convicted of. The defendant's proposed sentence of 101 months would not be sufficient to punish him, deter him from committing future crimes, or protect society. A

sentence of 180 months' imprisonment, followed by three years of supervised release, is sufficient but not greater than necessary to meet the purposes of 18 U.S.C. § 3553(a).

Dated: April 7, 2021　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　　John J. Farley
　　　　　　　　　　　　　　　　　　　　　　　Acting United States Attorney


　　　　　　　　　　　　　　　　　By:　　/s/ Anna Z. Krasinski
　　　　　　　　　　　　　　　　　　　　　Anna Z. Krasinski
　　　　　　　　　　　　　　　　　　　　　Assistant U.S. Attorney
　　　　　　　　　　　　　　　　　　　　　53 Pleasant Street, 4th Floor
　　　　　　　　　　　　　　　　　　　　　Concord, NH  03301
　　　　　　　　　　　　　　　　　　　　　(603) 225-1552